United States Horse Shoe Company, Appellant, *v.* The Erie, Reed Park & Lakeside Railway Company.

*Ejectment—Street railway—Irrevocable license—Findings of fact.*

Where an action of ejectment is brought against a street railway company to recover a strip of land eleven feet wide and 250 feet long and the case is tried by the court without a jury, a judgment in favor of the railway company will not be reversed where the court finds upon competent evidence that the defendant held the land in dispute under an irrevocable license authorizing the construction and operation of a street railway thereon, and that such railway had been in actual operation on the land for over eight years.

Argued April 7, 1912.  Appeal, No. 167, April T., 1912, by plaintiff, from judgment of C. P. Erie Co., Sept. T., 1907, No. 196, for defendant in case tried by the court without a jury in suit of United States Horse Shoe Company v. Erie, Reed Park & Lakeside Railway Company, The Erie City Passenger Railway Company, The Erie Electric Motor Company, and The Buffalo & Lake Erie Traction Co.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Ejectment for land in Mill Creek township.

The case was tried by WALLING, P. J., without a jury under the Act of April 22, 1874, P. L. 109.

The trial judge found the following facts and conclusions of law:

This is an ejectment to recover possession of a strip of land occupied by a track of a street railway.  It was tried before the court.  The facts are found as follows, viz.:

1. General Chas. M. Reed of Erie, dies testate in 1871. His last will and testament provides, inter alia, as follows, viz.:

"I hereby nominate and appoint my wife, Harriet W. Reed, Executrix, and my son, Charles M. Reed and

James C. Harrison, of Buffalo, in the State of New York, my Executors, and reposing special confidence in my friend, James C. Harrison, I will and direct that letters testamentary be granted him without giving bail or security as required by statute of the State of Pennsylvania in the case of foreign Executors.

"Whereas, I am desirous that my real estate shall not be parted and divided, I devise the same to my Executrix and Executors, in trust for my devisees, as hereinbefore mentioned, with full power to my said Executrix and Executors, to sell the same, or any portion thereof, from time to time, as may seem to them for the best interest and advantage of my estate, and to improve such parts or portions thereof, as in their judgment they may deem best. And all money arising from the sale of real estate to be divided in the proportions hereinbefore mentioned, giving and granting to my said Executrix and Executors full power to make conveyances for all real estate by them sold, or which I may have sold during my lifetime and not conveyed.

" And I do further specially provide, and it is my express will and intent, that my said Executrix and Executors shall not, nor shall any of them be liable for waste unless willful, nor any act or omission, unless such act or omission be his or her willful act or omission."

2. The executors and executrix named in the will were duly qualified and acted as such executors and trustees until Mr. Harrison's death in 1882, and thereafter, said Charles M. Reed and Mrs. Harriet W. Reed, continued to so act until Mr. Reed resigned in March, 1901. And then Mrs. Reed continued in the same capacity as sole surviving executrix and trustee until her death in December, 1901.

3. Shortly after Mrs. Reed's death, T. A. Lamb, Esq., took out letters c. t. a. on the estate of said General Chas. M. Reed, and was also appointed by the orphans' court as trustee under said will and has continued to so act and have charge of the estate since early in the year 1902.

4. A part of said real estate consisted of a farm in Mill-

creek township, Erie county, Pa., known as the Berken-kamp farm, situate on the south side of the Lake Road, a short distance east of Erie City.

5. Defendants are electric street railway companies duly chartered and doing business in this city and county and in 1899 were desirous of building a line of double track street railway along the Lake Road from the city east for about three miles to a resort on the bank of the lake, known as Four Mile Creek. Said Lake Road is fifty feet wide and it was deemed advisable to construct said railway just outside the highway and one track on each side thereof, to which most of the property owners consented. But at a point opposite said Berkenkamp farm, there was an owner of property on the north side of the street who refused to consent to a track being laid on his land. And to save the project, which was thought advantageous to the neighborhood, Charles M. Reed, as executor, acting for the estate, gave a verbal license or permit to have both tracks laid on the south side of the road through said Berkenkamp farm, and for that purpose, he gave, in addition to a ten-foot strip of land abutting on the street which he had already given for one track, an additional strip of land eleven feet in width for the second track. And it is the possession of such additional piece of land that is here in issue.

6. On the faith of such permit, the defendants, during the year 1899, constructed said double track street railway from Erie to Four Mile Creek at an expense of about $6,000; and have since continuously operated the same. The south track of said railway being located upon the said eleven feet strip of land in controversy, and to lose possession of same, would make a break in said double track system of railway and cause defendants great and irreparable injury.

7. A large place of public resort has been established at Four Mile Creek, largely on account of said railway, and to destroy same as a double track system, would cause great inconvenience to the public.

8. The other executrix and trustee, Mrs. Harriet W. Reed, knew of the license and permit so given by Chas. M. Reed and acquiesced therein, as did also Mr. Lamb, since his appointment as administrator and trustee. And it does not appear that any of the beneficiaries, under the will of General Reed, ever made any objection thereto.

9. When he gave such license or permit, Charles M. Reed was the ostensible owner of eleven fifty-fourths of the General Reed estate; and he was also president of one of the defendant's, to wit, The Erie, Reed Park & Lakeside Railway Company. But it does not appear that he is now, or was when he testified in this case, in any manner connected with or interested in said railway company. And there is nothing to indicate that he acted in bad faith in giving such permit.

10. On September 28, 1904, Mr. Lamb, as trustee, administrator, etc., duly conveyed by deed, a part of said Berkenkamp farm including the land at issue to John R. McDonald, trustee, which deed contains a clause, as follows, viz.: "This conveyance is made subject to the rights of the Street Railway Company, whose tracks are laid across the northerly end of the land above described." And later therein, the deed states as follows, viz.: "Subject to the rights of the said Street Railway Company as aforesaid." And on October 4, 1904, said McDonald, trustee, conveyed by deed the same premises to The United States Horse Shoe Company, the plaintiff herein. And his deed also contains a reservation as follows, viz.: "This conveyance made subject to the rights of the Street Railway adjoining the south side of said Lake Road." And so far as appears, plaintiff made no objection to the occupancy of the land in question by defendants until the bringing of this suit in 1907.

11. The defendants have been in full possession of the land at issue with their tracks openly and visibly thereon since 1899. And when they took possession, there was nothing to indicate that such possession was not intended to be permanent. That said possession was taken by

virtue of such permit and not under any right of eminent domain.

12. The trial of this case was begun before a jury; but as it presented mostly legal questions, a juror was withdrawn and the trial proceeded before the court on stipulation filed.

### LEGAL CONCLUSIONS

1. That under the will of General Reed, his executors became the legal owners of all his real estate, including the land in question, as trustees, with full power to control, improve and dispose of the same.

2. That the right of the defendants to occupy the strip of land in question given them by Charles M. Reed, one of said trustees, and acquiesced in by Mrs. Harriet W. Reed, the other trustee, and by the beneficial owners, constituted a parol license, which having been accepted and acted upon by the defendants by the expenditure of large sums of money, is irrevocable.

3. That the plaintiff, who bought the land with full notice, has no greater rights than had the owners of the land when the track was laid.

4. That, as the owners of the land acquiesced in the construction and operation of said double track street railway, until it has become an important means of public transportation, they cannot now destroy defendants' property, to their great loss and also to the great damage and inconvenience to the public, by receiving possession of the land in question in ejectment.

5. That the remedy, if any, would be an action for damages, and such action should be by the parties who owned the land when it was first taken and occupied by defendants.

6. Plaintiff is the owner of the fee of the piece of land in question, subject to the right of defendants to use it for its street railway track; and plaintiff will be entitled to possession when defendants cease to use it for that purpose, but as plaintiff was not entitled to possession

when the suit was brought, judgment should be entered for defendants and against plaintiff for costs.

*Error assigned* was in entering judgment for defendant.

*John S. Rilling,* for appellant.—The plaintiff contends that the right claimed by the defendant in the land in dispute is such that it could only have been granted by a proper writing executed by both trustees of the C. M. Reed estate: Penna. Schuylkill, etc., R. R. Co. v. Reading Paper Mills, 149 Pa. 18; Huff v. McCauley, 53 Pa. 206.

Plaintiff cannot be estopped: Reagan v. Curran, 226 Pa. 265; Juniata Bldg. & Loan Assn. v. Hetzel, 103 Pa. 507; Baldwin v. Taylor, 166 Pa. 507; Richards v. R. R. Co., 137 Pa. 524; Hall v. Epley, 31 Pa. 331; Crest v. Jack, 3 Watts, 238; Hepburn v. McDowell, 17 S. & R. 383; Com. v. Moltz, 10 Pa. 527.

*J. M. Sherwin,* for appellee.—A license to a street railway to operate its railway need not be in writing.   Parol licenses followed by expenditures are enforceable in Pennsylvania: Reagan v. Curran, 226 Pa. 265; Wright v. Chestnut Hill Iron Ore Co., 45 Pa. 475; Dark v. Johnston, 55 Pa. 164; Rerick v. Kern, 14 S. & R. 267; Davis v. Souder, 10 Phila. 113; Huff v. McCauley, 53 Pa. 206; Pierce v. Cleland, 133 Pa. 189; Thompson v. McElarney, 82 Pa. 174.

Licenses, such as permit to lay a railway track, are not forbidden by statute of frauds: Cumberland Val. R. R. Co. v. McLanahan, 59 Pa. 23.

Although both executors did consent, even if but the one active executor had consented, the license would have been good: DeHaven v. Williams, 80 Pa. 480; D'Invilliers v. Abbott, 4 W. N. C. 124.

OPINION BY MORRISON, J., May 13, 1912:

This action of ejectment was brought to recover possession of a strip of land eleven feet wide by 250 feet long in Mill Creek township, Erie county, Pa., situate

just east of the city of Erie, being the land on which the south track of the defendant's double track street railway was laid in 1899 and which strip has been in the possession of the defendants ever since. The land in dispute was owned by Charles M. Reed, Sr., in his lifetime and the parties to this controversy all claim under him. By writing filed January 26, 1911, it was agreed that the case should be tried before the court without a jury. On December 26, 1911, the court entered a judgment for the defendants for the land in dispute, from which judgment this appeal was taken.

A careful examination of the evidence, findings of fact, conclusions of law, exceptions, opinion of the court below on the exceptions, the assignments of error and the arguments of the able counsel for the respective parties leaves us in no doubt that the case was carefully and well tried and the learned judge below reached a correct conclusion in finding that this action of ejectment cannot be sustained because the defendants' hold the land in dispute under an irrevocable license authorizing the construction and operation of their street railway thereon and that said railway has been in actual operation on the land in dispute ever since its construction in 1899.

In view of the careful manner in which the case was tried and the correct conclusion reached we do not think it necessary or profitable to review the case at length and discuss the assignments of error separately. The six judges who heard the argument of this appeal agree that the evidence fully sustains the findings of fact and that the latter warrant the conclusions of law and the judgment in favor of the defendants.

The assignments of error are all dismissed and the judgment is affirmed.